**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

**CHAMBERS OF**
**J. Mark Coulson**
**UNITED STATES MAGISTRATE JUDGE**

**101 WEST LOMBARD STREET**
**BALTIMORE, MARYLAND 21201**
**P:(410) 962-4953 — F:(410) 962-2985**

November 16, 2026

LETTER MEMORANDUM OPINION AND ORDER TO ALL COUNSEL OF RECORD

RE: *Cassandra H. v. Frank Bisignano, Social Security Administration*
Civil No. 1:26-cv-01392-JMC

Dear Counsel:

Cassandra H. ("Plaintiff") petitioned this Court on April 9, 2026, to review the Social Security Administration's ("SSA" or "Commissioner") final decision denying her claims for disability insurance benefits ("DIB"). (ECF No. 1). The Court has considered the record in this case as well as the parties' dispositive filings. (ECF Nos. 9, 11). No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). The Court must uphold an agency decision if the decision is supported by substantial evidence and was reached through application of the proper legal standard. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will AFFIRM the ALJ's determinations for the reasons explained below.

## I. Procedural Background

Plaintiff filed her current Title II application for DIB on December 22, 2022, alleging disability as of May 7, 2021. (Tr. 151).[1] Plaintiff's Claim was initially denied on June 21, 2023, and upon reconsideration on January 29, 2024. *Id.* Thereafter, on February 12, 2024, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* A telephonic hearing took place on June 13, 2024. *Id.* ALJ Nelisbeth Ball subsequently determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame on August 8, 2024. *Id.* at 164-165. Thereafter, Plaintiff requested the Appeals Council to review the decision of the ALJ. *See id.* 173-174. On October 29, 2024, the Appeals Council granted the Plaintiff's Request for Review, vacated the hearing decision, and remanded the Plaintiff's claims for further proceedings. *Id.*

A second hearing was held in front of ALJ Ball on May 8, 2025. *Id.* at 180. ALJ Ball

[1] When the Court cites to "Tr.," it is citing to the official transcript (ECF No. 8) filed in this case. When citing to specific page numbers within the official transcript, the Court is referring to the page numbers provided in the lower right corner of the official transcript pages.

subsequently determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame on June 20, 2025. *Id.*192-193. Thereafter, Plaintiff requested the Appeals Council to review the decision of the ALJ. *See id.* 203-205. On August 6, 2025, the Appeals Council granted the Plaintiff's Request for Review, vacated the hearing decision, and remanded the Plaintiff's claims for further proceedings. *Id.*

A third hearing was held in front of ALJ Melvin Olmscheid on January 21, 2026. (Tr. 43). ALJ Olmscheid determined that that Plaintiff was not disabled within the meaning of the Social Security Act. *Id.* at 59. Thereafter, the Appeals Council affirmed the ALJ's decision. *Id.* at 1-6.

## II. The ALJ's Decision

In arriving at the decision to deny Plaintiff's claims, the ALJ followed the five-step sequential evaluation of disability set forth in the Secretary's regulations. 20 C.F.R. § 416.920. "To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work." *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). If the first three steps do not yield a conclusive determination, the ALJ must then assess the claimant's RFC, "which is 'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work[,]" by considering all of the claimant's medically determinable impairments regardless of severity. *Id.* at 635 (quoting 20 C.F.R. § 416.945(a)(1)). The claimant bears the burden of proof through the first four steps of the sequential evaluation. If the claimant makes the requisite showing, the burden shifts to the SSA at step five to prove "that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's residual functional capacity, age, education, and work experience." *Lewis v. Berryhill*, 858 F.3d 858, 862 (4th Cir. 2017) (internal citations omitted).

At step one in this case, the ALJ found that Plaintiff had not engaged in substantial gainful activity "since May 7, 2021, the alleged onset date." (Tr. 46). At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: "degenerative disc disease status- post lumbar discectomy, cervical spondylosis, chronic pain syndrome, fibromyalgia, anxiety, depression, and attention deficit hyperactivity disorder (ADHD) . . . ." *Id.*

At step three, the ALJ determined that Plaintiff's impairments or combination of impairments do not meet or equal one of the listed impairments in the regulations. *Id.* at 47; 20 CFR §§ 404(p), Appendix I (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.925, 416.926). In assessing Plaintiff's step-three impairments, the ALJ reasoned in part:

> With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. During a primary care visit on April 1, 2022, the claimant reported that she had a hard time focusing and staying on task. She explained that she did an online psychiatric evaluation, which revealed high likelihood of ADHD. As a result, her primary care provider prescribed Adderall 10mg (Exhibit 12F at 7).

> In October 2022, she reported that Adderall did not seem to be as effective as when she first started taking it. As such, her dose was increased from 10mg to 15mg (Exhibit 12F at 24). Consultative exam notes from June 2023 show that the claimant scored 30/30 on the MMSE; however, exam notes show some psychomotor agitation with some restlessness (Exhibit 21F). During a mental health assessment on October 26, 2023, the claimant reported that she previously took Adderall, Lamictal, and Zoloft, but no longer took any medication. She further reported that she had trouble starting tasks (Exhibit 25F at 60). On February 27, 2024, she presented for a psychiatry evaluation due to attention and concentration difficulties. She explained that she previously took Adderall for about a year with good effect, but then there was a shortage and she could no longer get the prescription (Exhibit 25F at 38). She became tearful when told that she would not be prescribed Adderall (Exhibit 25F at 41). In fact, she did not meet the criteria for ADHD (Exhibit 25F at 43-44).

(Tr. 48). Finding that Plaintiff had not proved that one or more of the above-mentioned severe impairments met or equaled one of the listed impairments in the SSA regulations, the ALJ determined Plaintiff's RFC as follows:

> the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can perform work that occasionally requires balancing, stooping, kneeling, crouching, crawling, and climbing (except never requires the use of ladders, ropes, or scaffolds). She needs to avoid all hazards. She can perform jobs consisting of simple work-related decisions, with only occasional changes in a routine work setting. Her time off task during the workday can be accommodated by normal breaks, i.e. she is able to sustain concentration and attention for 2 hours at a time.

*Id.* at 49. In reaching that decision, the ALJ engaged in a discussion of the Plaintiff's medical history, testimony, and the opinions of medical experts. *Id.* at 49-57. For example, the ALJ reasoned:

> The claimant, a 42-year-old woman with a high school education, alleges that she is unable to work as a result of her physical and mental impairments. She testified that she had low back surgery in 2021, but her backpain has only worsened. She testified that she uses a cane "occasionally," as it is particularly helpful with getting in and out of her vehicle, plus she uses the cane during bad flares. She also testified as to persistent neck pain, as well as widespread body pain. She testified that her chronic pain makes her tired (Hearing Testimony).
>
> . . .
>
> The State agency's medical consultant (S. Rudin, M. D.) determined that the claimant can perform sedentary work with occasional postural limitations except for no climbing ladders, ropes, or scaffolds. Dr. Rudin also determined that she should avoid even moderate exposure to hazards (Exhibit 2A). This determination

> is persuasive, as it is supported by reference to the claimant's chronic pain at multiple sites, particularly at her neck and back with radicular symptoms; but also exam notes showing no neurological deficits and normal gait (Exhibit 2A at 7). Otherwise, sedentary work is consistent with the claimant's longitudinal history of pain, but also exam notes showing normal range of motion, normal strength, no tenderness, no swelling, normal sensory exam, normal motor function exam, and no focal deficits (Exhibits 22F at 12, 27F at 7-8). Additionally, it is notable that the claimant was discharged from pain management in September 2022 and mostly went without pain medication until March 2025, when she reported that she "recently finished the last of [her] pain medication from 2022" (Exhibits 20F at 85, 34F at 124). Furthermore, it is notable that she adamantly declined physical therapy and also declined the spinal cord stimulator "due to being uncomfortable with an implanted device" (Exhibits 12F at 2-4, 31F at 9). As for medications, she was started on Cymbalta in October 2023, but stopped taking that medication by February 2024 (Exhibit 25F at 48, 57). Similarly, she was started on gabapentin in July 2025, but stopped taking that medication in August 2025 (Exhibit 34F at 39, 66). For all of these reasons, I find no evidence to support any additional physical limitations. Accordingly, the claimant can perform sedentary work except she can perform work that occasionally requires balancing, stooping, kneeling, crouching, crawling, and climbing (except never requires the use of ladders, ropes, or scaffolds). She needs to avoid all hazards.

*Id.* at 50, 55. The ALJ also noted that:

> In June 2023, consultative examiner Angela Nduaguba-Ezumba, D.O. opined: "The impact of her symptoms and effect on social functioning is apparent in her inability to tolerate and adapt to work-related stress and demands" (Exhibit 21F at 4). To the extent this is an opinion, it is not persuasive, as Dr. Nduaguba-Ezumba did not provide any specific support for the claimant's "inability to tolerate and adapt to work-related stress and demands." To the contrary, Dr. Nduaguba-Ezumba noted that the claimant arrived on time and unaccompanied, she had acceptable hygiene and grooming skills, and she was cooperative. Dr. Nduaguba-Ezumba also noted that the claimant scored 30/30 on the MMSE and is capable of managing her own benefit payments (Exhibit 2 IF). None of this supports a conclusion that the claimant is unable to "tolerate and adapt to work-related stress and demands." Furthermore, this opinion is inconsistent with Other notes showing that the claimant was able to volunteer at a cat rescue, work on a car, play in a pool league once a week, have a new boyfriend, go out twice a week to socialize, and attend an antique show (Exhibits 25F at 39, 48, 55; 34F at 62-63, 92).

*Id.* at 57.

The ALJ determined Plaintiff was unable to perform any past relevant work. *Id.* Finally, given Plaintiff's RFC, age, education, and work experience, the ALJ determined that Plaintiff could perform the following jobs which existed in significant numbers in the national economy: (1) document preparer, with approximately 14,200 such positions in the national economy; (2)

electronics inspector, with approximately 1,200 such positions in the national economy; and (3) eyeglass frames polisher, with approximately 1,120 such positions in the national economy. *Id.* at 58. Accordingly, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from May 7, 2021, through the date of the decision. *Id.* at 59.

## III. Legal Standard

The Court reviews an ALJ's decision to ensure that the ALJ's findings are supported by substantial evidence and were reached through an application of correct legal standards. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, . . . [which] consists of more than a mere scintilla of evidence but may be less than a preponderance." *Id.* (other citation and internal quotations omitted). In accordance with this standard, the Court does not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Instead, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Id.*

## IV. Analysis

Plaintiff argues on appeal that the ALJ's decision was not supported by substantial evidence. Specifically, from Plaintiff faults the ALJ's determination on several grounds: (1) that the ALJ's RFC determination fails to account for Plaintiff's "inability to sit for prolonged periods of time; use her hands; her need for additional breaks; her need to lie down; and focus, concentrate and attend work on a consistent basis[;]" and (2) that the ALJ did not meet his burden of proving that other work exists in significant numbers in the national economy that Plaintiff can perform. (ECF No. 9-1). For the reasons that follow, the Court disagrees with Plaintiff. As such, I will AFFIRM the case.

### a. The ALJ's RFC Determination is Supported by Substantial Evidence

"An RFC is an assessment that represents the most a claimant can still do despite any physical and mental limitations on a 'regular and continuing basis.'" *Rodney M. v. Kijakazi*, No. CV 23-0947-CDA, 2024 WL 1097192, at *3 (D. Md. Mar. 13, 2024) (quoting 20 C.F.R. § 416.945(b)–(c)). The ALJ "must consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work'" in determining a claimant's RFC. *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). "An ALJ's RFC assessment must include an evaluation of the claimant's ability to perform the physical functions listed in 20 C.F.R. § 404.1545(b), including sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions . . . [that] may reduce [a claimant's] ability to do past work and other work." *Rodney M.*, 2024 WL 1097192, at *3 (internal citation omitted). As previously explained by the Fourth Circuit, "every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by 'a narrative discussion describing [ ] the evidence' that supports it." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (quoting *Thomas*, 916 F.3d at 311). Thus, "[a] proper RFC analysis proceeds in the following order: (1)

evidence, (2) logical explanation, and (3) conclusion." *Id.* at 388 (cleaned up). The Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," though, and has explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio*, 780 F.3d at 636; *see also Monroe*, 826 F.3d at 188. A "necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling, including a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Monroe*, 826 F.3d at 189 (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)); *see also Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) ("In other words, the ALJ must *both* identify evidence that supports his conclusion *and* build an accurate and logical bridge from [that] evidence to his conclusion.") (internal quotation omitted) (emphasis in original). Indeed, "the driving consideration is whether the ALJ's analysis allows for meaningful judicial review," *Lail v. Kijakazi*, No. 21-2133, 2022 WL 1711809, at *1 (4th Cir. May 27, 2022). "Thus . . . remand is appropriate only where 'inadequacies in the ALJ's analysis frustrate meaningful review,' such as when an ALJ fails to assess a claimant's capacity to perform relevant functions or does not resolve material disputes in the record." *Delesline-Meggett v. Comm'r of Soc. Sec.*, No. 21-1859, 2023 WL 8230802, at *1 (4th Cir. Nov. 28, 2023).

Plaintiff argues that "the ALJ's RFC does not reflect all of [Plaintiff's] substantiated limitations." (ECF No. 9-1 at 16).[2] As outlined above, the ALJ reached the following RFC:

> the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can perform work that occasionally requires balancing, stooping, kneeling, crouching, crawling, and climbing (except never requires the use of ladders, ropes, or scaffolds). She needs to avoid all hazards. She can perform jobs consisting of simple work-related decisions, with only occasional changes in a routine work setting. Her time off task during the workday can be accommodated by normal breaks, i.e. she is able to sustain concentration and attention for 2 hours at a time.

(Tr. 49). Sedentary work involves "lifting no more than 10 pounds at a time and . . . [a]lthough a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. §§ 404.1567(a). "A sedentary RFC 'implies a capacity to sit for at least 6 hours in an 8-hour day[.]'" *Petula H. v. Bisignano*, No. CV 25-1678-CDA, 2026 WL 1981017, at *3 (D. Md. July 9, 2026) (quoting *Wilson v. Heckler*, 743 F.2d 218, 221 (4th Cir. 1984)); *accord* SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983) ("Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday.").

Plaintiff claims "[i]t is unconscionable that the ALJ finds that [Plaintiff] can sit six hours out of an eight-hour workday considering the objective and opinion evidence to the contrary."

---

[2] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document. Where a document does not have an electronic filing stamp, the Court is referring to the page numbers at the bottom of the document.

(ECF No. 9-1 at 17). The Commissioner generally argues that the ALJ built a proper logical bridge by properly considering relevant evidence. (ECF No. 11).

A careful review of the ALJ's RFC determination demonstrates that it rests upon substantial evidence. The ALJ engaged in a narrative discussion of Plaintiff's medical evidence spanning eight pages—including evidence Plaintiff suggests would lead to a different outcome—and ultimately concluded that Plaintiff has the residual functional capacity to perform sedentary work with additional limitations. (Tr. 49-57). In doing so, the ALJ reviewed Plaintiff's testimony regarding the intensity, persistence and effects of her alleged conditions. For example, the ALJ expressly acknowledged Plaintiff's testimony that she suffers from back pain after her lower back surgery in 2021, along with persistent neck pain, numbness and tingling of her legs, and widespread body pain that often makes her tired. *Id.* at 50. Additionally, the ALJ recognized that on February 7, 2022, exam notes detail that Plaintiff complained of "constant, severe, whole body pain." *Id.* at 51. Although Plaintiff's took oxycodone "about once a week or less" to manage pain, she continued to report worsened pain when completing household chores and mowing the lawn on her riding mower. *Id.* at 54.

The ALJ then logically explained how this evidence, Plaintiff's prior testimony, and the opinions of various medical experts led him to conclude that Plaintiff can perform sedentary work. Notably, despite this ample discussion, Plaintiff argues that her numerous MRIs compel a finding that she is not capable of performing sedentary work as each "MRI shows some sort of worsening or progression compared to the prior study." (ECF No. 9-1 at 17). The Court first recognizes that while the ALJ is required to consider all the Plaintiff's medical conditions, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision . . . ." *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir.2005)). Even so, review of the record proves that the ALJ considered the findings of Plaintiff's MRIs from to May 3, 2021 to April 2025. (Tr. 50-54). The ALJ made reference to Plaintiff's MRI findings during the months of October 2021, November 2021, April 2022, May 2022, January 2024, and April 2025. *Id.* at 50-51, 53-54. Thus, it cannot reasonably be said that the ALJ overlooked Plaintiff's MRI findings in formulating the RFC.

The ALJ also relied on the opinion of Dr. Rudin, the State agency's medical consultant, who opined that Plaintiff "can perform sedentary work with occasional postural limitations except for no climbing ladders, ropes, or scaffolds." (Tr. 55). The ALJ found the opinion to be persuasive given that it "is supported by reference to the claimant's chronic pain at multiple sites, particularly at her neck and back with radicular symptoms; but also exam notes showing no neurological deficits and normal gait." *Id.* Furthermore, the findings were consistent with Plaintiff's "longitudinal history of pain, but also exam notes showing normal range of motion, normal strength, no tenderness, no swelling, normal sensory exam, normal motor function exam, and no focal deficits" and it was especially notable that Plaintiff went from September 2022 to March 2025 "mostly without pain medication." *Id.* Consequently, the ALJ found no additional physical limitations are warranted. *Id.*[3]

Plaintiff's primary disagreement with the ALJ's RFC determination stems from the

[3] The ALJ also noted that consultive examiner Tahoora Kawaja, M.D., determined that Plaintiff had "normal range of motion, normal strength, no tenderness, and no swelling." (Tr. 53, 55, 1575).

opinions of Emily Sumner, PA-C ("PA-C Sumner"), which the Court construes as an argument that the ALJ improperly evaluated PA-C Sumner's opinions, and therefore the RFC is not supported by substantial evidence. (ECF No. 9-1 at 18). Although Plaintiff's Brief is largely unsupported by citations to relevant cases or statutes, it appears that Plaintiff claims the ALJ failed to properly evaluate PA-C Sumner's medical opinions for both supportability and consistency. *Id.* Plaintiff represents that PA-C Sumner's opinions support non-exertional limitations given her opinion that Plaintiff "could sit 20 minutes at a time and two-to-four hours total in an eight-hour workday; stand/walk five minutes at a time and less than two hours total in an eight-hour workday; would need to walk around every 10 minutes for five minutes; would need unscheduled breaks every hour for up to ten minutes; could rarely lift less than 10 pounds; and would be off task more than 25 percent of an eight-hour workday." *Id.* at 17.

"Until 2017, ALJs had to give 'controlling weight' to the medical opinion of an applicant's 'treating physician' so long as that opinion was 'well-supported . . . and [was] not inconsistent with the other substantial evidence in the case record.'" *Drumgold v. Comm'r of Soc. Sec.*, 144 F.4th 596, 604 (4th Cir. 2025) (quoting *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 384 (4th Cir. 2021)); 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2). The 2017 amendment to the Social Security regulations changed how ALJs evaluate medical opinion evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017). Under the new rule, ALJs must "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, they "shall consider all evidence available in [the] record," 42 U.S.C. § 423(d)(5)(B), and "evaluate the persuasiveness" of that evidence by applying a five-factor test, 20 C.F.R. §§ 404.1520c(a); 416.920c(a); *see also id.* §§ 404.1520c(b)(2), (c); 416.920c(b)(2), (c). The factors are: (1) supportability, (2) consistency, (3) relationship with the claimant (including length of treatment), (4) specialization, and (5) other factors (including the source's familiarity with other evidence and with the disability program's policies and evidentiary requirements). *Id.* §§ 404.1520c(c)(1)-(5); 416.920c(c)(1)-(5).

Supportability and consistency are the "most important factors." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Supportability means "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." *Id.* §§ 404.1520c(c)(1); 416.920c(c)(1). Consistency means "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* §§ 404.1520c(c)(2); 416.920c(c)(2).

The ALJ expressly considered PA-C Sumner's opinions as follows:

> In February 2022, the claimant's primary care provider, Emily Sumner, PA-C, completed a Lumbar Spine Medical Source Statement, wherein she opined that the claimant can sit for 20 minutes at one time, stand for 5 minutes at one time, and walk 4 city blocks without rest or severe pain. She opined that the claimant can stand/walk for less than 2 hours total in an 8-hour day, but can sit for 2-6 hours total. She opined that the claimant needs a job that permits shifting positions at will and needs to be able to walk around every 10 minutes for 5 minuets each time. She

> opined that the claimant needs hourly breaks for 5-10 minutes each time. She opined that the claimant needs to use a cane or other assistive device. She opined that the claimant can rarely lift/carry less than 10 pounds; rarely crouch/squat; occasionally climb stairs; and never twist, stoop, or climb ladders. She opined that the claimant can use her hands and fingers 5% of the time, but use her arms 20% of the time. She opined that the claimant will be off task at least 25% of the time and is capable of low stress work (Exhibit 7F at 1-4). In February 2022, Emily Sumner, PA-C also completed a Cervical Spine Medical Source Statement with the same abovementioned limitations, but also opined that the claimant can occasionally look down, turn her head, and look up; and rarely hold head in static position (Exhibit 7F at 6-10).

(Tr. 56). In evaluating PA-C Sumner's opinion, the ALJ discussed both consistency and supportability. The ALJ began by stating that PA-C Sumner's opinions to be "partially persuasive." *Id.* Specifically, the ALJ found that PA-C Sumner limits Plaintiff to "sedentary work, which is supported by reference to the claimant's chronic neck pain and chronic low back pain." *Id.* Nevertheless, the ALJ explained that the remaining limitations are not persuasive because "they are not well-supported by the findings documented in the opinion, nor are they well-supported by Emily Sumner's own treatment notes." *Id.* Notably, the ALJ stated that February 16, 2022 exam notes reflect Plaintiff was "well appearing and in no distress" with "normal mood and affect." *Id.* Additionally, Plaintiff's "musculoskeletal exam showed normal symmetry, tone, strength, and range of motion" and she "had no focal deficits and her gait was within normal limits." *Id.*

Turning to consistency, ALJ determined that PA-C Sumner's opinions were "not consistent with the claimant's abilities to do household chores, run errands, play pool, handle her own personal needs, work on a car, care for cats, mow the lawn, etc." *Id.* The ALJ also emphasized that PA-C Sumner's opinions are from "less than one year after the [Plaintiff's] back surgery," meaning they "are not necessarily related to the entire period at issue." *Id.* Consequently, the ALJ's explanation of PA-C Sumner's opinion is sufficient for the Court to find that it is supported by substantial evidence. An ALJ is not required to accept all components of a medical source's opinion "just because the ALJ finds [the opinion] to be generally persuasive." *Turner v. Comm'r of Soc. Sec.*, No. 23-1760, 2024 WL 2764722, at *5 (4th Cir. May 30, 2024); *Boulden v. O'Malley*, No. 24-1414, 2025 WL 48337, at *5 (4th Cir. Jan. 8, 2025) (explaining that an ALJ is not required to incorporate each limitation from a medical opinion into the RFC so long as the ALJ explains why certain limitations are unsupported by the record). And, as stated *supra*, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Reid*, 769 F.3d at 865 (internal citation and quotation marks omitted). So long as the ALJ's decision "reflects careful consideration of the record evidence and provides reasons connecting that evidence to the conclusions it reached about [the claimant's] RFC," the Court will have "everything it needs to undertake its review of that decision for substantial evidence." *Turner*, 2024 WL 2764722, at *5 (citing *Shinaberry v. Saul*, 952 F.3d 113, 122 (4th Cir. 2020)). Therefore, reading the ALJ's decision as a whole, the Court finds no error in the ALJ's consideration of PA-C Sumner's opinion.

Instead, the Court finds that the ALJ considered but rejected additional non-exertional limitations when determining Plaintiff's RFC. The ALJ did not find persuasive the medical opinions that proposed limitations for reasons clearly articulated and often related to Plaintiff's

daily activities and ultimately reached an RFC that limited the Plaintiff to sedentary work. Thus, the Court finds that the ALJ's analysis permits the Court to engage in meaningful review. Plaintiff's Brief largely amounts to a request for the Court to reweigh the evidence, and her disagreement with the ALJ's conclusions cannot displace such conclusions when they are, as here, supported by substantial evidence. *See Fiske v. Astrue*, 476 F. App'x 526, 527 (4th Cir. 2012) ("This court does not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; '[w]here conflicting evidence allows reasonable minds to differ,' we defer to the Commissioner's decision.") (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)); *Hultz v. Bisignano*, 162 F.4th 111, 120 (4th Cir. 2025) ("[T]he reviewing Court should not undertake to reweigh conflicting evidence . . . or substitute its judgment for that of the agency.") (citation omitted). Thus, I will affirm the ALJ's opinion on this issue.

b. <u>The ALJ's Evaluation of Plaintiff's Moderate Difficulties in Concentration, Persistence, or Pace Comports with Mascio v. Colvin</u>

Plaintiff also appears to argue that the ALJ's evaluation of Plaintiff's "moderate difficulties" in concentration, persistence, or pace does not comply with the Fourth Circuit's holding in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015), one of only two cases cited by Plaintiff in the body of her argument. At step three, an ALJ must determine whether a claimant's impairments meet or medically equal any impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Listings 12*.00 et. seq*. When evaluating a claimant's mental disorder, defendant must employ a special technique to assess the degree of limitation in each functional area. 20 C.F.R. §§ 416.920a(b),(c)(2)(2017). Limitations include none, mild, moderate, marked, or extreme. *Id.* § 416.920a(c)(4). A moderate limitation signifies that the claimant has only a fair ability to function in the relevant area of mental functioning. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(F)(2)(c) (2017). Relevant here, concentration, persistence, or pace "refers to the abilities to focus attention on work activities and stay on task at a sustained rate." *Id.* at § 12.00(E)(3). When a plaintiff has a "moderate" limitation in maintaining concentration, persistence, or pace, the ALJ must either include a corresponding limitation or explain why no such limitation is necessary. *Shinaberry v. Berryhill*, 952 F.3d 113, 121 (4th Cir. 2020); *see also Talmo v. Comm'r, Soc. Sec.*, Civil Case No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015).

*Mascio* "did not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." *Shinaberry*, 952 F.3d at 121. In *Shinaberry*, when the ALJ addressed the claimant's lifelong, borderline intellectual disability and explained why the psychological evidence in the claimant's statements supported a mental limitation to simple, routine, and repetitive tasks, the ALJ's findings were proper on that issue. *Id.* at 122.

At step three of the analysis, the ALJ determined that Plaintiff suffered from moderate difficulties in concentration, persistence, or maintaining pace. (Tr. 48). The ALJ explained that Plaintiff completed an online psychiatric evaluation revealing a high likelihood of ADHD, causing her primary care provider to prescribe Adderall. *Id.* Additionally, the ALJ explained that notes from June 2023 reveal that Plaintiff scored a 30/30 on the MMSE, and that on October 26, 2023, Plaintiff no longer took any medication. *Id.* On February 27, 2024, Plaintiff presented for a

psychiatry evaluation due to attention and concentration difficulties, explaining that she previously took Adderall with good effect but that she was unable to get the prescription due to a medication shortage. *Id.*

In determining Plaintiff's RFC, the ALJ considered the opinions of the State agency's mental health consultants Hillary Lake, M.D. & Joseph Leizer, Ph.D., finding both opinions partially persuasive. *Id.* at 55-56. The ALJ explained that they determined Plaintiff "has moderate mental limitations except for only mild limitation in understand, remember, or apply information." *Id.* at 55. The ALJ went on to evaluate these assessments as follows:

> the moderate limitations are supported by reference to the claimant's restlessness and tangentiality, and that her chronic pain sometimes interferes with her concentration; but also her perfect MMSE score and ability to live alone, drive, shop, manage her finances, and follow written instructions (Exhibits 2A at 5, 6A at 5). However, more consistent with the claimant's own testimony that she does not have any issues getting along with other people, I find a mild limitation in interaction (Hearing Testimony). Otherwise, the moderate limitation in concentration, persistence, or pace is consistent with exam notes showing some psychomotor agitation with some restlessness, as well as the claimant's own report that she had trouble starting tasks (Exhibits 21 F, 25F at 60). Furthermore, the moderate limitation in adapt or manage oneself is consistent with the claimant' s limited insight and fair judgment, but also her ability to handle various activities Of daily living (Exhibits 25F at 41, 34F at 63). Accordingly, I find that she can She can perform jobs consisting of simple work-related decisions, with only occasional changes in a routine work setting. Her time off task during the workday can be accommodated by normal breaks, i.e. she is able to sustain concentration and attention for 2 hours at a time.

*Id.* at 56. To the extent Plaintiff claims that the ALJ failed to account for Plaintiff's moderate limitations in concentration, persistence, or pace in the RFC, the Court finds the argument unpersuasive. The ALJ's analysis of both sufficiently connected his step thee findings to the RFC assessment and provided sufficient explanation regarding Plaintiff's limitations throughout the RFC narrative. In view of the above reasoning, along with the ALJ's detailed explanation of Plaintiff's physical impairments, the Court finds that there is sufficient explanation of Plaintiff's ability to maintain concentration, persistence, and pace such that the Court can engage meaningful review.

c. <u>The ALJ Properly Determined that jobs Exist in Significant Numbers in the National Economy</u>

Plaintiff argues that "the ALJ does not meet his burden of proving that other work exists in significant numbers in the national economy that [Plaintiff] can perform." (ECF No. 9-1 at 19). Plaintiff claims that the jobs proposed are not represented in significant numbers in the national economy. *Id.*

At step five, "the Commissioner has the burden to prove by preponderant evidence that a

claimant can perform work that exists in significant numbers in the national economy considering the claimant's residual functional capacity, age, and work experience." *Andrea K. v. Comm'r of Soc. Sec.*, No. CV EA-25-1237, 2026 WL 1041942, at *5 (D. Md. Apr. 16, 2026); *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015). "To answer this final question—whether sufficient other work exists for the claimant in the national economy—the ALJ 'rel[ies] primarily' on the *Dictionary* [*of Occupational Titles*]." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (quoting Social Security Ruling 00-4p (SSR 00-4p), Policy Interpretation Ruling: Titles II & XVI: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Information in Disability Decisions, 2000 WL 1898704, at *2 (Dec. 4, 2000)). The Dictionary of Occupancy Titles "list[s] occupations existing in the economy and explain[s] some of the physical and mental requirements of those occupations." *Id.* at 205 n. 1. "The ALJ 'may also use' a vocational expert to address complex aspects of the employment determination, including the expert's observations of what a particular job requires in practice or the availability of given positions in the national economy." *Id.* at 207 (quoting SSR 00-4p, 2000 WL 1898704, at *2).

The Act defines "work which exists in the national economy" as "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A) (internal quotation marks omitted). The Act does not require that a given job exist in the immediate area in which Plaintiff lives, that a specific job vacancy exist for Plaintiff, or that Plaintiff would be hired if she applied. *See id.* "The Fourth Circuit has not explicitly defined what constitutes significant numbers . . . ." *Andrea K.*, 2026 WL 1041942, at *5. However, it has "allowed very small numbers to fulfill the requirement of significant numbers in the national economy." *Clarence M. v. Comm'r, Soc. Sec. Admin.*, No. CV SAG-21-2163, 2022 WL 958473, at *5 (D. Md. Mar. 30, 2022) (internal quotation marks omitted); *see also Hicks v. Califano*, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) (declining to determine that 110 regional jobs would be an insignificant number); *Hodges v. Apfel*, No. 99-2265, 2000 WL 121251, at *1 (4th Cir. Jan. 28, 2000) (finding 153 jobs to be a significant number); *see also Lawler v. Astrue*, No. BPG-09-1614, 2011 WL 1485280, at *5 (D. Md. Apr. 19, 2011) (finding that the fact that there were only 75-100 jobs in the region where plaintiff lives "does not undermine the ALJ's conclusion that plaintiff is capable of performing work that exists in significant numbers in the national economy."); *Hyatt v. Apfel*, 153 F.3d 720, 3 (4th Cir. 1998) (declining to determine that 650 statewide jobs would be an insignificant number).[4]

Here, the vocational expert testified and the ALJ found that Plaintiff is capable of performing the jobs of document preparer with 14,200 positions nationally, electronics inspector with 1,200 jobs nationally; and eyeglass frames polisher, with 1,120 jobs nationally. (Tr. 58). Together, the ALJ found Plaintiff capable of performing 16,520 jobs in the national economy, a figure higher than the smaller numbers the Fourth Circuit and this Court have found to satisfy the Commissioner's burden at step five. Therefore, the ALJ did not err in finding that jobs exist in significant numbers in the national economy that Plaintiff can perform.

## V. Conclusion

[4] "[T]his Court has held that the 'ALJ need only identify a single job within the claimant's capacity that exists in significant numbers in the national economy at step five.'" *Andrea K.*, 2026 WL 1041942, at *6 (quoting *Howard W. v. O'Malley*, No. CV 23-687-CDA, 2024 WL 1194488, at *4 (D. Md. Mar. 20, 2024) (internal quotation and alteration omitted)).

In sum, the Court agrees with the Commissioner that the ALJ adequately explained Plaintiff's RFC determination and underlying reasoning, and that Plaintiff can perform jobs that exist in significant numbers in the national economy. In other words, the ALJ's determination for Plaintiff is supported by substantial evidence for the reasons explained above. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED. The Clerk of the Court is accordingly asked to CLOSE this case.

Despite the informal nature of this letter, it is an Order and Opinion of the Court, and the Clerk is directed to docket it as such.

Sincerely yours,

/s/

J. Mark Coulson
United States Magistrate Judge